IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

5:16-CR-298-D-1
5:18-CR-87-D-11

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM (UNDER SEAL)** |
| TREYTON LEE THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, TREYTON LEE THOMAS, by and through undersigned counsel, respectfully submits this Sentencing Memorandum pursuant to 18 U.S.C. § 3661, to provide additional information for the Court's consideration concerning the various factors found in 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines in fashioning a sentence for Mr. Thomas that is "sufficient, but not greater than necessary" to satisfy the principles of 18 U.S.C. § 3553(a)(2). Simply stated, the sentence ultimately imposed should be the least restrictive necessary to comply with Congressional intention. *Id*.

Undersigned counsel, for reasons set forth herein, respectfully asks the Court to impose a sentence based on a downward variance as the Court might find appropriate. *See United States v. Booker*, 543 U.S. 220 (2005)(determining the Guidelines to be merely advisory).

On October 2, 2018, Mr. Thomas pled guilty, pursuant to a written Plea Agreement, to count six (6) of Indictment 5:16-CR-298-D-1, for wire fraud, in violation of 18 U.S.C. § 1343, and count two (2) of

1

Indictment 5:18-CR-87-D-11, for income tax evasion, in violation of 26 U.S.C. § 7201. Mr. Thomas' sentencing is currently scheduled for Monday, April 15, 2019.

## HISTORY AND CHARACTERISTICS OF DEFENDANT

Mr. Thomas (age 62) was born on May 15, 1956, in Roxboro, North Carolina, to the marital union of Ronnie E. Thomas and Dorothy Thomas. *See* Presentence Investigation Report ("PSR") at ¶¶ 96, 99. His parents separated and divorced when he was just two (2) years old. *Id*. at ¶ 97. While a toddler, Mr. Thomas was significantly impacted by this failed marriage because his mother left the home and he never saw her again. *Id*. Mr. Thomas is aware that his mother is no longer living, but he does not know when or how she died. *Id*.

Mr. Thomas was raised under the care of his father, Ronnie, and his paternal grandparents. *See* PSR at ¶ 97. In 1969, Ronnie married Mr. Thomas' stepmother, Ruby Thomas. *Id*. Although Ronnie and Ruby eventually separated, Mr. Thomas recounts having had a good relationship with both Ronnie and Ruby during his adolescent years. *Id*. Ruby passed away sometime between 2010 and 2011 after suffering from heart failure. *Id*. Ronnie subsequently died of natural causes in April of 2015. *Id*. Mr. Thomas does not have any siblings.

Mr. Thomas lived in Roxboro until the age of twelve (12) when he moved to Durham, North Carolina. *See* PSR at ¶ 99. After living in Durham for two years, Mr. Thomas relocated to South Boston, Virginia, where he graduated from Halifax Senior High School in 1974. *Id*. at ¶¶

2

99, 103. Mr. Thomas excelled at Halifax High, performing well above his peers in both academics and athletics. During his senior year, he was one of six students selected to attend an annual journalism conference at Columbia University in New York City. In that same year, he broke the school record in pole vault as a lettered track and field athlete. Upon graduating from high school, Mr. Thomas enlisted in the United States Marine Corps. *See* PSR at ¶ 99. From August 23, 1974, to June 22, 1977, he was active duty, serving as a personnel chief in Morocco. He was the recipient of three meritorious promotions and three meritorious masts. When he was not working on the base, he accepted an invitation from the principal of the local American High School to volunteer as a physical education instructor. Given his athletic background, Mr. Thomas also coached some of the athletic sports teams at the Americam High School. Upon his honorable release from active duty in 1977, Mr. Thomas had achieved the rank of Sergeant and E5 pay grade. He continued to serve in the reserves until 1982.

Following his active military service, Mr. Thomas resided in the State of Virginia where he enrolled as a full-time student at New River Community College (NRCC), from approximately 1977 to 1979. While attending NRCC, Mr. Thomas enrolled part-time at Virginia Polytechnic Institute and State University ("Virginia Tech") in Blacksburg, V.A. It was during this time that Mr. Thomas began to suffer from vertigo, which kept him from regularly attending his classes at Virginia Tech. As a result, Mr. Thomas was placed on academic probation and

3

ultimately suspended from the university. This set back however did not end Mr. Thomas' desire for higher education. Between September and November 1997, Mr. Thomas studied at Harvard University where he completed the Advanced Management Program. *See* PSR at ¶ 103. Mr. Thomas continued his studies at Harvard through the university's continuing education extension school, and, in 2002, graduated *cum laude* with a bachelor degree in Liberal Arts.

In 1984, Mr. Thomas moved to Atlanta, Georgia, where he worked at Merrill Lynch in the investment banking division. Mr. Thomas left Merrill Lynch around 1989 and went to work for Lehman Brothers as Senior Vice President and Region Manager of the corporation's southeast market. Sometime after his employment at Lehman Brothers in Atlanta, Mr. Thomas provided contract work for Kidder-Peabody & Company and Sutton Action Committee, Inc. In 2005, Mr. Thomas moved to Naples, Florida, where he worked in the field of quantitative research. It was during this time that Mr. Thomas developed his algorithms for global financial markets for Cambridge Decision Science and Marbury Advisors.

Shortly after moving to Naples, Mr. Thomas married Cheryl Stone ("Ms. Stone") on October 15, 2005. *See* PSR at ¶ 98. The couple resided in Naples until 2014 when they moved to Charlottesville, V.A. Mr. Thomas and Ms. Stone do not have any children and their marriage ultimately ended in absolute divorce on September 28, 2017. *Id*.

Mr. Thomas reports being in overall good health. *See* PSR at ¶ 100. He does require support from orthopedic shoes due to a plantar fasciitis ailment, which was diagnosed in 2008. *Id*. Mr. Thomas has never been counseled for mental health concerns or substance abuse. *Id*. at ¶ 101. He does report having struggled with Attention Deficit Disorder over the years, which may have developed into an abuse of amphetamine-type drugs like Adderall and Vyvanse. *Id*. He believes that he could benefit from counseling and substance abuse treatment while in Bureau of Prisons (BOP) custody. *Id*. at ¶ 102.

## FRAMING AN APPROPRIATE SENTENCE

"Since *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are advisory, and sentencing courts have discretion to sentence defendants within the statutory range, regardless of whether the sentence falls within the Guidelines range or without." *United States. v. Raby,* 575 F.3d 376, 380 (4th Cir. 2009). "[C]onsideration of the Guidelines, which is but one of the seven factors listed in 18 U.S.C. § 3553(a), is only 'the starting point and the initial benchmark.'" *Gall v. United States*, 552 U.S. 38, 49 (2007); *United States v. Evans*, 526 F.3d 155, 160-61 (4th Cir. 2008). The court 'then consider[s] what sentence is appropriate for the individual defendant.'" *Raby*, 575 F.3d at 380-81.

### Downward Variance Factors

Mr. Thomas has been determined to be a Total Offense Level 34 and Criminal History Category I, with a corresponding guideline range of

5

151 to 188 months. Undersigned counsel respectfully requests a downward variance based on factors set forth in 18 U.S.C. § 3553(a), Mr. Thomas' history and characteristics, the need for restitution, and the totality of the circumstances when fashioning an appropriate sentence for Mr. Thomas.

As the Court is aware, undersigned counsel filed an objection to the obstruction of justice enhancement contemplated in the Presentence Investigation Report (PSR). To reiterate, but not belabor counsels position on that point, the Plea Agreement between Mr. Thomas and the Government did not include an enhancement for obstruction of justice. Instead, the Plea Agreement specifically addressed a large number of the potential enhancements applicable to Mr. Thomas's case, as well as a stipulation that the full 3-level reduction for acceptance of responsibility was appropriate. The sentencing factors as forecast in the Plea Agreement established Mr. Thomas' Total Offense Level 32, with a corresponding guideline range of 121 to 151 months. Should the Court accept the obstruction of justice enhancement (and acceptance of responsibility), making Mr. Thomas' Total Offense Level 34, and corresponding guideline range 151 to 188 months, undersigned counsel respectfully proposes that a sentence within the guideline range of 121 to 151 months as contemplated by the Plea Agreement is sufficient, but not greater than necessary in light of the sentencing factors of § 3553(a).

6

### Offense Conduct

Under 18 U.S.C. § 3553(a)(1), a sentencing court must take into account the "nature and circumstances of the offense." While the PSR contains a rather lengthy and complex rendition of the offense conduct involved in this case, Mr. Thomas would have the Court know that although his actions became criminal, his conduct did not begin with specific criminal intent. With no prior criminal history, Mr. Thomas began to engage in the affairs of NCVA following a request from his father who sought his son's business acumen. Mr. Thomas' initial intentions were just that, to assist his father by using his analytical skills to generate a better return on NCVA investments. Only later did Mr. Thomas' actions turn criminal, an unfortunate fate which he acknowledges. Because he was actually investing his own money along with the money of the victims in this case, Mr. Thomas himself lost significant financial resources as a result of his criminal conduct.

### Military Service

In addition to the nature and circumstances of the offense, a sentencing court must also take into account "the history and characteristics of the defendant[,]" which includes a defendant's military service. 18 U.S.C. § 3553(a)(1). "Military service may [also] be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the

7

case from the typical cases covered by the guidelines." USSG §5H1.1. Accordingly, undersigned counsel requests a downward variance and/or downward departure based on Mr. Thomas' honorable service to this country as a member of the U.S. Marine Corps.

Mr. Thomas enlisted in the U.S. Marine Corps on August 23, 1974, just a few months after his eighteenth birthday. During basic training, Mr. Thomas was selected by his drill instructor as the Platoon Honorman of Platoon 274. According to Mr. Thomas, only one member of the platoon receives this distinguishment. Following his basic training at Parris Island boot camp, Mr. Thomas entered the Personnel Administration School where he attained the rank of Lance Corporal and was Honor Graduate of the Unit Diary Clerk Course. In February of 1975, Mr. Thomas deployed to the Marine barracks in Kenitra, Morocco.

**Employment Record & Need to Provide Restitution**

While "[e]mployment record is not ordinarily relevant in determining whether a departure is warranted[,]" Mr. Thomas' history of gainful employment distinguishes him from most other defendants. *See* USSG §5H1.5; 18 U.S.C. § 3553(a)(1). It is Mr. Thomas' capacity to attain gainful employment that sets him apart, in addition to maximizing his ability to make restitution.

The United States Probation Office has determined that restitution in the amount of $7,310,592.53 is owed to the victims in this case. *See* PSR at ¶ 152. It is respectfully suggested that the

8

need for restitution is a particularly weighty factor for the Court's sentencing considerations, *see* 18 U.S.C. § 3553(a)(7), and that the need for the defendant to pay restitution weighs in favor of a non-Guideline sentence in this case. In doing so, the Court would increase and expedite Mr. Thomas' ability to make restitution to the victims, especially given his gainful employment record. Imposition of a shorter period of confinement, followed by a lengthy period of supervised release, *see* 18 U.S.C. § 3563(b)(10), (11), (19), makes it more likely that Mr. Thomas can begin making regular, steady progress towards his restitution obligations. *See* 18 U.S.C. § 3563(a)(6).

## Acceptance of Responsibility

Mr. Thomas has accepted responsibility for his involvement in the offense by timely notifying authorities of his intention to plead guilty. *See* PSR at ¶¶ 136-137. Mr. Thomas chose to plead guilty and avoid the need for a lengthy jury trial in this case knowing that his plea exposes him to maximum terms of imprisonment of thirty years and five years. *See* 18 U.S.C. § 1343; 26 U.S.C. § 7201. Mr. Thomas regrets the fact that his actions have caused significant monetary loss for the victims in this case. Mr. Thomas voluntarily forfeited $322,085.37 in U.S. currency to the United States. Additionally, prior to the filing of any indictments, Mr. Thomas paid back to Steve Matthews, owner of Matthew Motors in Clayton, North Carolina, an amount of $40,000.00. Although Mr. Thomas is far from satisfying the loss owed

to his victims, he has made and will continue to make efforts to right his wrongs.

### Individual Assessment Based on the Totality of the Circumstances and the Purposes of the Sentencing

Undersigned counsel respectfully proposes that the requested downward variance would result in a sentence that would be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing authorized by Congress: retribution, deterrence, protection of the public, and correction. *See* 18 U.S.C. § 3553(a)(2)(A-D). In consideration of the totality of the circumstances, undersigned counsel asks the Court to exercise its authority pursuant to 18 U.S.C. § 3553(a) and find that the sentence recommended by the advisory guidelines, taken in light of the nature and circumstances of the offense, Mr. Thomas' history and characteristics, and the need for restitution represents an unreasonable sentence in Mr. Thomas' case.

### CONCLUSION

For the reasons outlined herein, undersigned counsel respectfully requests that this Court apply a downward variance as set out in 18 U.S.C. § 3553(a). Undersigned counsel respectfully asks the Court to find that a downward variance, resulting in a sentence below the range recommended by the sentencing guidelines, would be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. *See* 18 U.S.C. § 3553(a)(2)(A-D). Undersigned counsel argues that a shorter period of active incarceration, followed by an

extended term of supervised release, would account for retribution and allow Mr. Thomas to begin making restitution to his victims.

WHEREFORE, based on the preceding arguments as supported herein by both facts and authorities, Mr. Thomas respectfully requests:

1. That the Court consider a downward variance in fashioning a below-guideline sentence that is sufficient, but not greater than necessary;

2. That the Court find that Mr. Thomas is unable to pay a fine;

3. That the Court impose a special assessment in the amount of $100.00, due and payable immediately; and

4. That the Court grant Mr. Thomas such other and further relief as it may deem just, proper, and reasonable.

Respectfully submitted, this, the 10th day of June, 2019.

                            DYSART WILLIS HOUCHIN & HUBBARD

                By:  /s/ Geoffrey Ryan Willis
                    GEOFFREY RYAN WILLIS
                    N.C. State Bar No. 33004
                    Email: ryan@dysartwillis.com
                    507 N. Blount Street
                    Raleigh, NC  27604
                    Telephone: (919) 747-8380
                    Fax:  (919) 882-1222
                    APPOINTED ATTORNEY FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANT'S SENTENCING MEMORANDUM (UNDER SEAL)** was filed with the Clerk of Court for the Eastern District of North Carolina on 10 June 2019, using the CM/ECF system. It was served upon the following attorney of record via electronic mail:

>John E. Harris
>Susan B. Menzer
>Melissa Belle Kessler
>Assistant United States Attorney
>United States Department of Justice
>310 New Bern Avenue, Suite 800
>Raleigh, North Carolina 27601

This, the 10th day of June, 2019.

>DYSART WILLIS HOUCHIN & HUBBARD
>
>By: /s/ Geoffrey Ryan Willis
>GEOFFREY RYAN WILLIS
>N.C. State Bar No. 33004
>Email: ryan@dysartwillis.com
>507 N. Blount Street
>Raleigh, NC  27604
>Telephone: (919) 747-8380
>Fax:  (919) 882-1222
>APPOINTED ATTORNEY FOR DEFENDANT