IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:16-CR-00298-D

**UNITED STATES OF AMERICA,**

   *Plaintiff,*

   v.

**TREYTON LEE THOMAS,**

   *Defendant.*
_____/

### MOTION FOR RETURN OF UNTAINTED PROPERTYAND FOR A FINDING THAT DEFENDANT HAS SATISFIED THE FINANCIAL OBLIGATIONS OF THE CRIMINAL JUDGMENT

TREYTON LEE THOMAS, through undersigned counsel, moves pursuant to the Fifth and Eighth Amendments of the Constitution for (1) return of $2,237,762, which represents the excess of the $14,271,031.16 that the government alleged was owed by the defendant in connection with this criminal matter had the bitcoin and bitcoin cash been liquidated promptly following entry of the April 5, 2021 Final Order of Forfeiture of Cryptocurrency and Turnover Order in this case, (2) return of the $407,286 in other funds held by the government that were preliminarily forfeited, and (3) a declaration that Mr. Thomas has satisfied his financial obligations under the criminal judgment. To the extent that the Court deems it necessary to make factual findings regarding the unreasonableness of the 39-day delay in executing the Final Order, Mr. Thomas requests an evidentiary hearing.

This motion is made on the ground that return of Mr. Thomas' untainted property and the other relief requested herein would be consistent with the Fifth and Eighth Amendments and this Court's April 5, 2021 Final Order of Forfeiture of Cryptocurrency and Turnover Order ("Final

1

Order"), which authorized the government to sell defendant's untainted cryptocurrency (bitcoin and bitcoin cash) and "take reasonable efforts to return said property to the defendant" the excess of the "Net Proceeds" of such sale beyond the amount necessary to satisfy defendant's financial obligations under the criminal judgment. D.E. 177 at 5.

On April 5, 2021, each bitcoin was priced at approximately **$59,057**, so the government could have liquidated just 241.65 of Thomas's 279.54 bitcoin to achieve "Net Proceeds" of "$14,271,031.16 [that the government alleged was] owed by the defendant in connection with this criminal matter," D.E. 176 at 3, leaving 37.89 bitcoin to be returned to Thomas. Or, if the government liquidated all of Thomas's 279.54 bitcoin at once (at the April 5 price of $59,057), it should have netted approximately $16,508,793, *i.e.*, **$2,237,762** in excess of the "$14,271,031.16 that the government alleged was owed by the defendant. Either way, by now, pursuant to the Final Order, the government should have returned to the defendant *either* 37.89 bitcoin *or* $2,237,762 (the excess of the Net Proceeds), plus $407,286 in other funds held by the government that were preliminarily forfeited but were not needed to satisfy either the forfeiture or restitution in this case.

The government, however, did not promptly implement the Court's Final Order. Despite repeated prompting by defendant, and with bitcoin surging to a high of $64,863 on April 14, 2021, the government did not liquidate the bitcoin and bitcoin cash until May 14, 2021, thirty-nine (39) days after the Final Order, when the bitcoin at a much lower average price of **$50,968**. So, instead of the expected *surplus* of $2,237,762 in excess of the "$14,271,031.16 [that the government alleged was] owed by the defendant in connection with this criminal matter," D.E. 176 at 3—which the Court ordered be returned to the defendant, D.E. 177 at 5—the government now claims that there is a $14,000 *deficit* and proposes to forfeit that much more of defendant's untainted assets to satisfy the monetary penalties to which defendant objected. Defendant objects and moves

the Court for (1) return of the bitcoin and bitcoin cash (or their U.S. dollar equivalent as of April 5, 2021 Final Order) that should have been returned to defendant upon prompt execution of the Final Order, (2) return of the $407,286 in other funds held by the government that were preliminarily forfeited, and (3) a declaration that he has satisfied his financial obligations under the criminal judgment. In further support, Mr. Thomas states:

1. On July 2, 2019, pursuant to a plea agreement, the government filed an Amended Motion for Issuance of Preliminary Order of Forfeiture, D.E. 131, which the Court granted, forfeiting to the United States the defendant's interest in certain property, to wit:

(a) $322,085.37 in directly forfeitable United States currency; and

(b) $6,960,438.63 in additional proceeds that the defendant personally obtained directly or indirectly as a result of the criminal violation to which he pled guilty, and for which the Court found that the United States is entitled to forfeit substitute assets equal to the value of the proceeds obtained by the defendant. Preliminary Order of Forfeiture, D.E. 132.

2. The Preliminary Order also preliminarily forfeited certain substitute assets in satisfaction of the $6,960,438.63 forfeiture money judgment, including "[a]ll bitcoin ("BTC") and bitcoin cash ("BCH") owned by Thomas in wallets and/or accounts held through third-party currency exchange Coinbase (approximately 279.543012 BTC and 279.543012 BCH), including any and all proceeds from the sale of such BTC/BCH." D.E. 132 at 2. The Preliminary Order of Forfeiture also preliminarily forfeited untainted funds in three different accounts totaling approximately $407,286. *Id.* (paras. (ii, iii, iv)).

3. Upon receiving authorization to seize the above-stated bitcoin and bitcoin cash pursuant to the Preliminary Order of Forfeiture, the United States transferred 279.54265708 bitcoin and 17.58531728 bitcoin cash (hereafter, the "Cryptocurrency Assets") into government custody. The

Cryptocurrency Assets were held by the United States Marshals Service. See D.E. 176 at 2. According to the government, "the balance of the preliminarily forfeited bitcoin and bitcoin cash was inaccessible due technological issues associated with the products in which the cryptocurrency was 'held.'" *Id*. at 2 n.1. The government advised the Court that, "to the extent the government is able to recover these assets in the future, and there remains an outstanding amount on the defendant's forfeiture money judgment, the United States may seek a final order of forfeiture as to those assets at a later date." *Id*. The government also took possession of the funds in the three accounts totaling $407,286.

4. On January 22, 2021, the government filed a Motion for Interlocutory Sale of Cryptocurrency. D.E. 174. The government attached to its motion a draft order proposing to allow the government to have the Cryptocurrency "***immediately*** liquidated by the United States Marshal Service ("USMS") by selling or otherwise exchanging the Cryptocurrency for U.S. Currency in accordance with USMS procedures for disposal of bitcoin and bitcoin cash and applicable law." D.E. 174-1 at 1 (emphasis added). The Court did not act on that motion.

5. On April 1, 2021, the government filed its Motion for Final Order of Forfeiture of Cryptocurrency and Application of any Excess Funds to Criminal Monetary Penalties. D.E. 176. 4. The government proffered that "no petitions [had] been filed with respect to the bitcoin or bitcoin cash referenced in the Preliminary Order of Forfeiture by any third party. Accordingly, the bitcoin and bitcoin cash are ripe for final forfeiture to the United States." *Id*. at 5 (para. 11). Although not mentioned in the government's Amended Motion for Issuance of Preliminary Order of Forfeiture, D.E. 131, nor in the Motion for Interlocutory Sale of Cryptocurrency, D.E. 174, the government claimed that "a balance of $7,310,592.53 remained outstanding on defendant's criminal monetary penalties, consisting wholly of the restitution he owes to the victims of his

crimes." D.E. 176 at 2. Thus, in the government's view, defendant was obligated to pay the "[t]he sum of the defendant's outstanding forfeiture judgment ($6,960,438.63) ***and*** the outstanding restitution owed ($7,310,592.53) result[ing] in a total amount of **$14,271,031.16** owed by the defendant in connection with this criminal matter." *Id.* at 3. The government's motion noted defendant's objection as follows:

> Mr. Thomas submits that the sentence did not authorize forfeiture plus restitution; that the sentence imposed authorized forfeiture only as a means to collect the restitution amount imposed (i.e., any "money recovered" by the government by way of forfeiture "will go to pay restitution"). Accordingly, Mr. Thomas objects to the government forfeiting assets (e.g., BITCOIN) beyond the amount necessary to pay off the restitution amount.

D.E. 176 at 12.

6. Based upon the April 1, 2021 closing price of bitcoin ($59,905 per bitcoin)[1] and bitcoin cash ($236.13), the sale of the preliminarily forfeited bitcoin and bitcoin cash described above would yield U.S. dollars well in excess of the sum of the forfeiture money judgment and restitution amount.

7. Over objection, the government's motion requested "that the Court issue a Final Order of Forfeiture forfeiting, and authorizing the United States to sell, an amount of bitcoin and/or bitcoin cash reasonably necessary to satisfy the defendant's $6,960,438.63 forfeiture money judgment as of the time of the sale," and "sell or exchange additional bitcoin or bitcoin cash in the same or subsequent sales up to the amount necessary to satisfy the defendant's outstanding $7,310,592.53 restitution order." D.E. 176 at 3.

---

[1] Thomas submits that the Court should take judicial notice of the price of bitcoin and volume of transactions on any given day by reference to one of the several websites that publish bitcoin pricing: *See, e.g.*, https://coinmarketcap.com/currencies/bitcoin/historical-data/; https://www.coindesk.com/price/bitcoin.

8. Without awaiting a written response from the defendant, the Court granted the government's motion on April 5, 2021, entering a Final Order of Forfeiture of Cryptocurrency and Turnover Order, D.E. 177 ("Final Order"), which the government itself had drafted. Compare D.E. 176-1 with D.E. 177. Defendant timely noticed an appeal from the Final Order. D.E. 179 (Notice of Appeal). Defendant's Opening Brief is currently due in the Fourth Circuit on August 23, 2021.

9. According to the Court's Final Order, "[a]fter the sale(s) of the Forfeited Cryptocurrency and Additional Cryptocurrency, and the deposit of the Net Proceeds of such sales in the Department of Treasury's Assets Forfeiture Fund and/or with the Clerk's Office in accordance with the terms of this Order, to the extent that any bitcoin, bitcoin cash, and/or Net Proceeds from the sale of the Forfeited Currency or Additional Cryptocurrency remain in government custody, the United States shall, barring further court order, ***take reasonable efforts to return said property to the defendant***." D.E. 177 at 5 (emphasis added).

10. On April 5, 2021, each bitcoin was priced at approximately **$59,057**, so to achieve "Net Proceeds" of "$14,271,031.16 [that the government alleged was] owed by the defendant in connection with this criminal matter," D.E. 176 at 3, the government could have liquidated just 241.65 of Thomas's 279.54 bitcoin, leaving 37.89 bitcoin to be returned to Thomas, along with the inaccessible bitcoin cash and the $407,286 in untainted funds preliminarily forfeited. D.E. 132 at 2 (paras. (ii, iii, iv)). Or if the government liquidated all of Thomas's 279.54 bitcoin at once (at the April 5 price of $59,057), it should have netted approximately $16,508,793, *i.e.*, **$2,237,762** in excess of the "$14,271,031.16 that the government alleged was owed by the defendant, in addition to the $407,286 in untainted funds preliminarily forfeited. D.E. 132 at 2 (paras. (ii, iii, iv)).

11. On the same day that the April 5, 2021 Final Order was entered, and in the days following, defendant sought from the government information regarding the liquidation of the

bitcoin and proposed to government counsel (by emails) that the government use a sell-limit of $60,000 when liquidating the bitcoin. Government counsel responded on April 8 that the government would "not agree to a specific sell limit. But after speaking with the USMS, it is my understanding that historically, the government has worked closely with the exchange operator(s) to achieve very close to market prices for bitcoin sales, including the sale of large volumes of cryptocurrency. I certainly expect this to be the case when the bitcoin at issue here is liquidated."

12. As of April 14, 2021, when the price of bitcoin had surged to a high of $64,863, the government had still not liquidated the bitcoin. On April 15, 2021, with bitcoin valued at $62,700 according to a google search,[2] defendant requested an update from government counsel. On April 23, government counsel assured the defendant that the government was "continuing to work with the USMS to achieve liquidation of the bitcoin."

13. On April 27, 2021, government counsel advised that:

> The main reason that the bitcoin at issue here has not yet been liquidated is because the USMS has been finalizing a contract with a vendor to handle custody and disposition of bitcoin and other cryptocurrencies nationwide. Those negotiations have been underway since before the entry of the forfeiture and turnover order in this case, and that contract was just announced on Thursday, April 22. The company BitGo has been awarded the contract. Now that the contract has been awarded, it is my understanding the USMS is in a position to work out what will be directly liquidated and when, although we may not get more guidance on these issues until later this week. It is possible that liquidation happens this week, or it may be longer. As you know, and as I have said from the beginning, the United States' goal is to maximize the value of the forfeited assets, but it has to comply with its own procedures and obligations.

---

[2] https://www.google.com/search?q=bitcoin+value&rlz=1C1GCEU_enUS819US819&oq=bitcoin+value&aqs=chrome..69i57j0i131i433j0i433l2j0j0i433j0j0i131i433j0.3090j0j15&sourceid=chrome&{google:instantExtendedEnabledParameter}ie=UTF-8

Government counsel had not previously expressed any impediment to prompt liquidation of the bitcoin; to the contrary, together with its Motion for Interlocutory Sale of Cryptocurrency, D.E. 174, the government had attached the draft order proposing to allow the government to have the Cryptocurrency "***immediately*** liquidated by the United States Marshal Service ("USMS"). D.E. 174-1 at 1. And it has been widely reported that for years—even before "the USMS [was] finalizing a contract with a vendor to handle custody and disposition of bitcoin and other cryptocurrencies nationwide"—the U.S. Marshal Service has been seizing and selling bitcoins: "For years, the government has been seizing, stockpiling and selling off cryptocurrencies, alongside the usual assets one would expect from high-profile criminal sting operations. 'It could be 10 boats, 12 cars, and then one of the lots is X number of bitcoin being auctioned,' explained Jarod Koopman, director of the IRS' cybercrime unit." Mackenzie Sigalos, *The IRS Has Seized $1.2 Billion Worth of Cryptocurrency This Fiscal Year – Here's What Happens to It* (published August 4, 2021) (available online at https://www.cnbc.com/2021/08/04/irs-has-seized-1point2-billion-worth-of-cryptocurrency-this-year-.html); Tanya Macheel, *U.S. Marshals Service Hires Custodian to Hold Crypto Seized inn Criminal Activity* (published July 28, 2021) (available online at https://www.cnbc.com/2021/07/28/us-marshals-service-hires-custodian-to-hold-crypto-seized-in-criminal-activity.html) ("The Marshals Service has seized and sold more than 185,000 bitcoins worth more than $7.2 billion since about 2014.").

14. On April 29, 2021, defendant filed a pro se Motion for Protective Order and/or Clarification, asking the Court to enter an order "requiring the Government to not sell the Assets below a market value of $60,000, or, at least, clarify its prior Order to require the Government to comport itself with respect to protecting [defendant]''s property interest in the Assets 'to exercise

ordinary care and skill' and not re-deliver the Assets to [defendant] 'in a lesser condition.'" D.E. 182 at 4. The government did not file a response to, and the Court did not act on, the motion.

15. On May 3, 2021, with bitcoin closing at a price of $57,200, defendant requested an update from government counsel. On May 18, 2021, government counsel advised that on May 14, 2021 the U.S. Marshal Service liquidated (A) all of defendant's bitcoin, at an average price of $50,968, and (B) 17.58531937 BCH (bitcoin cash) at an average price of $1,334.00, yielding proceeds of approximately $14,256,948, approximately $14,000 short of the sum of the forfeiture money judgment plus restitution amount.

16. Thirty-nine (39) days had elapsed between the April 5, 2021 Final Order (when bitcoin was priced at approximately $59,057) until the May 14, 2021 sale of the bitcoin by the U.S. Marshal (at an average price of $50,968). Instead of the expected *surplus* of $2,237,762 in excess of the "$14,271,031.16 [that the government alleged was] owed by the defendant in connection with this criminal matter," D.E. 176 at 3—which the Court ordered be returned to the defendant, D.E. 177 at 5—the government now claims that there is a $14,000 *deficit*, so it proposes to retain that much of the $407,286 in untainted funds preliminarily forfeited, D.E. 132 at 2 (paras. (ii, iii, iv)), to satisfy the monetary penalties to which defendant objected.[3]

---

[3] On July 29, 2021, government counsel advised defendant's counsel that approximately $7,296,509 of the liquidated bitcoin has been deposited in the Court registry toward the court-ordered restitution obligation. The government has advised that these funds will be disbursed to the victims identified in the criminal judgment, and that the government plans to seek a turnover order from this Court allowing the remaining restitution balance (approximately $14,000) to be turned over from the preliminarily forfeited assets currently in the government's possession. The defendant and the government have reached the following agreement on these issues. First, with respect to the disbursement of restitution funds to the victims, the government and the defendant have agreed that (a) the defendant will not seek a stay or otherwise take action to prevent disbursement of funds to the victims; and (b) the government will not assert that disbursement of restitution funds to victims, on its own, renders the issues raised by the defendant in this motion or in the defendant's currently pending appeal moot. Second, with respect to the remaining restitution balance (approximately $14,000, according to the government), and consistent with the foregoing agreement as to restitution payments, the defendant will consent to the entry of an order allowing the remaining restitution balance to be turned over to the Court from preliminarily forfeited funds currently held in government custody. That should leave approximately $393,286 (i.e., $407,286 - $14,000), over which the government agrees it no longer has a further claim in this criminal case.

17. The purported deficit was no fault of the defendant. Rather, the government now claims that it was unprepared by April 5, 2021 to liquidate the defendant's untainted bitcoin because, as of April 27, 2021, it had not yet finalized a contract with a vendor to "handle custody and disposition of bitcoin and other cryptocurrencies nationwide," even though the government had assured the defendant on April 8 "that historically, the government has worked closely with the exchange operator(s) to achieve very close to market prices for bitcoin sales, including the sale of large volumes of cryptocurrency."

18. By April 5, 2021, when this Court entered the Final Order, all potential third-party claims had been extinguished so the bitcoin should have been sold immediately. *See United States v. Sheth*, No. 09 CR 69-1, 2017 WL 66820, at *10 (N.D. Ill. Jan. 6, 2017) ("The government does, then, have a duty of good faith in connection with the sale procedures, but the court concludes that the timing of the sale of the properties does not reflect a violation of that duty … *in light of the government's inability to convey a clear title before the third-party interests were adjudicated*.") (emphasis added), *aff'd in part, vacated in part, remanded,* 924 F.3d 425 (7th Cir. 2019). Defendant submits that the government breached a duty of care owed to the defendant by delaying the sale of bitcoin and not implementing a sell-limit (as requested by the defendant). *Compare Rose v. United States*, 988 F.2d 121 (9th Cir. 1993) (unpublished) ("Rose has produced neither evidence nor law showing that it was a breach of a duty of care for the marshal to take nearly a month before executing the conveyance.").

19. Accordingly, defendant moves the Court for an order requiring that the government return to him all of his property in the government custody and control, including (1) the $407,286

from the three accounts, D.E. 132 at 2, (2) the inaccessible bitcoin cash, and (3) $2,237,762 representing the cash equivalent of the bitcoin in excess of "Net Proceeds" that timely liquidation should have yielded, based on the price of bitcoin on the date of the filing of the Final Order, and the fact that the price of bitcoin surged to an all-time high in the week following the Final Order. This relief is justified to achieve the objective of the Court's April 5, 2021 order and avoid inflicting financial injury upon the defendant for the government's unreasonable (39-day) delay in executing on the Final Order. See *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008) ("[W]hen an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid.") (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) ("The Excessive Fines Clause thus 'limits the government's power to extract payments, whether in cash or in kind, 'as punishment for some offense.'").

20. Defendant also seeks a declaration that all financial conditions of this criminal judgment have been satisfied.

21. AUSA Harris has advised that the government objects to the requested relief and plans to file a response.

## CONCLUSION

For the reasons set forth above, the Defendant, Treyton Lee Thomas, respectfully requests that the Court for an order (1) that the government return of $2,237,762, which represents the excess of the "$14,271,031.16 that the government alleged was owed by the defendant in connection with this criminal matter had the bitcoin and bitcoin cash been liquidated promptly following entry of the Final Order, (2) that the government return the $407,286 in other funds held by the government that were preliminarily forfeited but not needed to satisfy the forfeiture or

restitution in this case, and (3) stating declaring that Mr. Thomas has satisfied his financial obligations under the criminal judgment. To the extent that the Court deems it necessary to make factual findings regarding the unreasonableness of the 39-day delay in executing the Final Order, Defendant requests an evidentiary hearing.

Respectfully submitted, this the 16th day of August, 2021.

CHESHIRE PARKER SCHNEIDER, PLLC

/s/ Elliot S. Abrams
Elliot S. Abrams
N.C. State Bar # 42639
P. O. Box 1029
Raleigh, NC 27602
(919) 833-3114 (TEL)
(919) 832-0739 (FAX)
elliot.abrams@cheshirepark.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date shown below, he electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to counsel for the United States, John Harris.

This the 16th day of August, 2021.

/s/ Elliot S. Abrams
Elliot S. Abrams
CHESHIRE PARKER SCHNEIDER, PLLC